[Cite as *Masters v. Ohio Dept. of Medicaid*, 2022-Ohio-3075.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

AMANDA MASTERS, INDIVIDUALLY    :
AND AS MOTHER AND NEXT FRIEND    :
OF F.M., A. MINOR, et al.    :   Appellate Case No. 2022-CA-9
   :
    Plaintiffs-Appellants    :   Trial Court Case No. 20212161A
   :
v.    :   (Appeal from Probate Court)
   :
OHIO DEPARTMENT OF MEDICAID,    :
et al.    :
   :
    Defendants-Appellees

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2022.

. . . . . . . . . . .

SAM G. CARAS, Atty. Reg. No. 0016376 and DAVID M. DEUTSCH, Atty. Reg. No. 0014397, 130 West Second Street, Suite 310, Dayton, Ohio 45402
   Attorneys for Plaintiffs-Appellants

DENNIS V. YACOBOZZI II, Atty. Reg. No. 0076339, 1243 South High Street, Columbus, Ohio 43206
   Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} The appellants in this case are Amanda and Bud Masters, individually and as mother and father and next friends of F.M., a minor (collectively the "Masters"). The appellees are the Ohio Department of Medicaid ("Department"), Maureen Corcoran, Director of the Department, and the Ohio Attorney General (collectively, "Appellees"). The Masters are appealing from the dismissal of their declaratory judgment acton against Appellees. The trial court dismissed the case because R.C. 5160.37 provides an administrative process for resolving the matter in question here, which involves the extent to which the Department should be reimbursed for payments it made on F.M.'s behalf under the Medicaid Program.

{¶ 2} According to the Masters, the trial court had exclusive original jurisdiction over their declaratory judgment action pursuant to R.C. 2101.24 and R.C. 2721.03. They further contend that the court erred in deciding that R.C. 5160.37 divested it of jurisdiction. They claim that another statute, R.C. 2323.44, controls over R.C. 5160.37 and allows them to bring a declaratory judgment action.

{¶ 3} The Masters also argue that R.C. 5160.37, as applied here, violates 42 U.S.C. 1396p(a)(1), which is the Federal Medicaid Anti-Lien Provision. Finally, the Masters contend that applying R.C. 5160.37 would cause a fine and forfeiture in violation Article 1, Section 21 of the Ohio Constitution, based their selection of Medicaid as their health care system.

{¶ 4} We conclude that the trial court correctly dismissed this case for lack of subject matter jurisdiction. R.C. 5160.37 provides an exclusive administrative remedy

for resolving disputes over amounts medical assistance recipients must pay the Department after obtaining a tort recovery from liable third parties. Under this statute, the Masters were required to ask for an administrative hearing to dispute the rebuttable presumption in R.C. 5160.37(G)(2) as to the amount the Department would receive. R.C. 5160.37(N) also allows the Masters to appeal to the common pleas court from the administrative decision, and they can raise their "as applied" constitutional challenges during that appeal.

{¶ 5} R.C. 2323.44(B) does allow declaratory actions to be brought to resolve disputes over the distribution of recoveries in tort actions, "[n]othwithstanding any contract or statutory provision to the contrary." This statute applies to certain "subrogees" who are defined under R.C. 2323.44(A)(5). However, R.C. 2323.44 does not apply to the Department, which has a right of recovery granted by R.C. 5160.37(A), rather than a traditional subrogation interest, and is not, in any event, a "subrogee" as defined by R.C. 2323.44(A)(5).

{¶ 6} Accordingly, the Masters' assignments of error will be overruled, and the judgment of the trial court will be affirmed.


I. Facts and Course of Proceedings

{¶ 7} On November 8, 2021, the Masters filed a complaint for declaratory judgment in the trial court, challenging the validity, enforceability, and constitutionality of the Department's subrogation rights. The action was brought under R.C. 2721.03 and R.C. 2323.44.

{¶ 8} According to the complaint, the Masters' daughter, F.M., was prematurely born in April 2010 and suffered permanent moderate mental disability and several physical ailments requiring a lifetime of constant supervision. In 2016, the Masters brought suit against the obstetricians who had refused treatment for an incompetent cervix, which allegedly resulted in F.M.'s premature birth at 23 weeks and the resulting injuries.

{¶ 9} Trial began in August 2021. For about a year before trial began, the Masters' attorneys communicated with the Ohio Tort Recovery Unit ("OTRU") and determined that the Department's subrogation claim was significantly undervalued. Another $200,000 was identified, making the total claim $338,421.70. The complaint did not identify OTRU, but it is part of Health Management Services ("HMS"), which "is contracted by * * * [the Department] to provide a full range of third party liability services." *See* http://www.ohiotort.com/oh/statutes.asp (accessed July 22, 2022).

{¶ 10} The Masters' trial attorneys tried to secure settlement authority from the Department's counsel, but were unsuccessful. As a result, they settled the case during trial. Of the $1,500,000 settlement, the Masters' attorneys intended to demand 40% (or $600,000) based on a contingency fee agreement. This was subject to probate court approval. They also had advanced about $87,116 for litigation expenses. After the settlement occurred, the Department rejected a $100,000 offer for its claim but said it would accept $200,000. In light of this, the Masters filed suit against Appellees, seeking a finding that the Department would be entitled to no more than 15% of its claim. The Masters relied on R.C. 2323.44(B)(1), which limits subrogation recovery where an injured

party recovers less than the full value of a tort claim. The 15% figure was based on the assertion that, for various reasons, the Masters had to settle claims worth more than $10,000,000 for only $1,500,000.

{¶ 11} The Masters attached several exhibits to their complaint. Included were copies of settlement correspondence and emails their attorney exchanged with the Department's counsel between May 5, 2021 and October 29, 2021. As noted, the Masters filed a complaint against Appellees soon after the Department refused to accept less than $200,000.

{¶ 12} On December 9, 2021, Appellees filed a Civ.R. 12(B)(1) and (B)(6) motion to dismiss the complaint based on lack of subject matter jurisdiction. Alternatively, Appellees asked the court to transfer the case to Franklin County, Ohio. The Masters filed a response on December 29, 2021. On January 7, 2022, the trial court filed an entry concluding that it lacked jurisdiction over the case because the administrative procedure in R.C. 5160.37 controlled and was the exclusive remedy. The Masters timely appealed from that judgment.

## II. Jurisdiction

{¶ 13} The Masters' first two assignments of error are interrelated and will be considered together. They state that:

> The Common Pleas Probate Court Division of Clark County Erred
> When It Determined the Process Authorized by R.C. §5160.37 Divested It
> of Jurisdiction.

The Clark County Common Pleas Court Probate Division Has Exclusive, Plenary, Original Jurisdiction Pursuant to Ohio Revised Code §2101.24(A)(1)(e)(1)(m)(r) [incorrectly referenced as "s"], (C)(D), et. seq. and §2721.03 for this action.

{¶ 14} Under these assignments of error, the Masters contend that the probate court has exclusive jurisdiction over all matters touching a guardianship and that the trial erred in concluding that it lacked jurisdiction over the case. This argument is based on R.C. Chap. 2101, R.C. Chap. 2111, R.C. 2721.03, and R.C. 2323.44. In response, Appellees argue that probate courts have limited jurisdiction and lack the ability to decide Medicaid disputes, which are governed by an administrative process established by R.C. 5160.37. Before addressing these points, we will briefly outline the standards that apply to motions to dismiss.

A. Applicable Standards

{¶ 15} As indicated, dismissal here was sought under both Civ.R. 12(B)(1) and (6). Both types of dismissals are reviewed de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12. In de novo review, both appellate and trial courts apply the same standards. *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 16} In reviewing Civ.R. 12(B)(6) motions to dismiss, courts "presume that the complaint's factual allegations are true and make all reasonable inferences in the nonmoving party's favor." *Ohio Civ. Serv. Emps.* at ¶ 12, citing *Mitchell v. Lawson Milk*

*Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In this situation, a trial court's judgment may be affirmed "only when there is no set of facts under which the nonmoving party could recover." *Id.*, citing *O'Brien v. Univ. Community Tenants Union*, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶ 17} "The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale,* 36 Ohio App.3d 65, 67, 520 N.E.2d 1378 (10th Dist.1987). Under Civ.R. 12(B)(1), a court may "consider outside matter attached to a motion to dismiss for lack of jurisdiction without converting it into a motion for summary judgment if such material is pertinent to that inquiry." *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 214, 358 N.E.2d 526 (1976).

{¶ 18} While some exhibits were attached to the complaint, the trial court's decision was based solely on the complaint and some facts that are not disputed. In such situations, " 'appellate review is limited to a determination of whether the facts are indeed undisputed and whether the trial court correctly applied the law.' " *Smith v. White*, 2014-Ohio-130, 7 N.E.3d 552, ¶ 25 (2d Dist.), quoting *Horine v. Vineyard Community Church*, 1st Dist. Hamilton No. C-060097, 2006-Ohio-6620, ¶ 6. With these standards in mind, we turn to the issue of the trial court's alleged error.

B. Jurisdiction

{¶ 19} The issue is whether the trial court lacked subject matter jurisdiction over

this case because the Masters were required to pursue the administrative process in R.C. 5160.37. "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a case." *Pivonka v. Corcoran*, 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098, ¶ 20, citing *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23. "Without subject-matter jurisdiction, a trial court has no power to act." *Id.*, citing *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 78, 701 N.E.2d 1002 (1998).

{¶ 20} The Masters argue that they were entitled to bring a declaratory judgment action under R.C. 2721.03 for a determination of whether R.C. 5160.37 or R.C. 2323.44 applies and of their constitutional challenges to R.C. 5160.37. It is true that R.C. 2721.02 and R.C. 2721.03 permit declaratory judgment actions to be brought to declare legal rights, including statutory and constitutional rights. However, "[t]he declaratory-judgment statutes 'do not extend the jurisdiction as to the subject matter upon which a court may act,' but instead 'extend the power of the court to grant declaratory relief within its respective jurisdiction.' " *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 42, quoting *State ex rel. Foreman v. Bellefontaine Mun. Court*, 12 Ohio St.2d 26, 28, 231 N.E.2d 70 (1967). Therefore, we first consider what jurisdiction the court was given by constitution or statute.

{¶ 21} "The general subject matter jurisdiction of Ohio courts of common pleas is defined entirely by statute pursuant to Section 4(B), Article IV of the Ohio Constitution, which states that '[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law.' " *State v. Wilson*, 73 Ohio St.3d 40, 42, 652 N.E.2d 196 (1995). The case before us was filed

in the probate court, which is a division of the common pleas court. R.C. 2101.01(A) and (B)(1). "Proceedings in probate court are restricted to those actions permitted by statute and by the Constitution, since the probate court is a court of limited jurisdiction." *Corron v. Corron*, 40 Ohio St.3d 75, 531 N.E.2d 708 (1988), syllabus.

{¶ 22} R.C. 2101.24 gives probate courts exclusive jurisdiction over certain matters listed in R.C. 2101.24(A)(1)-(2) "except as provided by law," concurrent jurisdiction with the general division of the common pleas court over the matters listed in R.C. 2101.24(B), and plenary jurisdiction as provided in R.C. 2101.24(C). As jurisdictional bases, the Masters rely on R.C. 2101.24(C) and (D), which state that:

> (C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.

> (D) The jurisdiction acquired by a probate court over a matter or proceeding is exclusive of that of any other probate court, except when otherwise provided by law.

{¶ 23} According to the Masters, this "plenary original exclusive jurisdiction" extends to any matter properly before the court, including: governing the conduct of guardians and fiduciaries and the settling of their accounts; rendering declaratory judgments; acting for and issuing orders concerning wards; and approving and distributing settlement proceeds on behalf of minor wards. Masters' Brief, p. 5-6, citing R.C. 2101.24(A)(1)(e), (l), (m) and (r) (incorrectly referenced as "(s)"), and R.C. 2111.18. In light of this authority, the Masters argue that probate courts can rule on all matters

directly related to disposition of a ward's settlement proceedings, including the Department's subrogated Medicaid claims. *Id.* The Masters further contend that by its express terms, R.C. 2323.44 applies to a ward's interests.

**{¶ 24}** R.C. 2323.44 provides, in pertinent part, that:

(B) Notwithstanding any contract or statutory provision to the contrary, the rights of a subrogee or any other person or entity that asserts a contractual, statutory, or common law subrogation claim against a third party or an injured party in a tort action shall be subject to both of the following:

(1) If less than the full value of the tort action is recovered for comparative negligence, diminishment due to a party's liability under sections 2307.22 to 2307.28 of the Revised Code, or by reason of the collectability of the full value of the claim for injury, death, or loss to person resulting from limited liability insurance or any other cause, the subrogee's or other person's or entity's claim shall be diminished in the same proportion as the injured party's interest is diminished.

(2) If a dispute regarding the distribution of the recovery in the tort action arises, either party may file an action under Chapter 2721. of the Revised Code to resolve the issue of the distribution of the recovery.

**{¶ 25}** According to the Masters, the Department qualifies under this statute based on R.C. 2323.44(A)(5)(b), which includes "[a] self-funded plan providing health, sickness, or disability benefits" within the definition of "subrogee." The term "self-funded" is not

defined.

**{¶ 26}** In dismissing the action for lack of subject matter jurisdiction, the trial court rejected R.C. 2323.44 as a jurisdictional basis because that statute does not include the Department as a "subrogee." Instead, the court found that R.C. 5160.37 controlled and required the Masters to resort to the administrative process outlined in that statute.

**{¶ 27}** The Masters argue that the trial court was incorrect, because R.C. 5160.01(D) expressly defines Medicaid as a self-funded medical assistance program. They further assert that since R.C. 5160.37's predecessor (R.C. 5101.58) was enacted, courts have uniformly recognized all versions of the statute as subrogation statutes. We will consider these points in turn.

### 1. Self-Funding

**{¶ 28}** As an initial point, we note that R.C. 5160.01(D) says nothing about Medicaid being "self-funded." Instead, it states, in pertinent part, that:

> As used in this chapter [R.C. Chap. 5160]:
>
> * * *
>
> (D) "Medical assistance program" means all of the following:
>
> (1) the medicaid program.

**{¶ 29}** All this means is that Medicaid is a medical assistance program for purposes of R.C. Chap. 5160. In addition, the term "self-funded" is not mentioned in R.C. Chap. 5160, which contains various provisions pertaining to the Medicaid Department.

**{¶ 30}** "The Medicaid program, which provides joint federal and state funding of

medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA), as added, 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III)." *Arkansas Dept. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). "States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program." (Footnote omitted.) *Id.*, citing 42 U.S.C. 1396a.

**{¶ 31}** 42 U.S.C. 1396a outlines the requirements for state plans for medical assistance. It does not mention the term "self-funded." Likewise, 42 U.S.C. 1396b, which discusses payments the federal government will make to each state that has an approved medical assistance plan, does not refer to such a term. In fact, the entirety of U.S.C. Title 42, Subch. XIX (dealing with grants to states for medical assistance programs) does not reference the term "self-funded."

**{¶ 32}** Typically, "self-funded" is used to refer to employers or other groups who fund or pay for their own health or benefit plans. *E.g.*, *Estate of Shackelford*, 2016-Ohio-1431, 63 N.E.3d 584, ¶ 3 (12th Dist.) (referencing a PNC Financial Group, Inc. Welfare Benefit Plan, which was "an ERISA-qualified, self-funded plan administered by Aetna"); *600 Superior Corp. v. Lexington Ins. Co.*, 8th Dist. Cuyahoga No. 50797, 1986 WL 7299, *4 (June 26, 1986) (employee medical bills were paid by employer's "self-funded plan");

*Select Specialty Hosp. - Sioux Falls, Inc. v. Brentwood Hutterian, Brethren, Inc.*, D.S.D. No. 4:19-CV-04171-KES, 2021 WL 6125814, *1 (Dec. 28, 2021) (case involved "a consortium of Hutterite Colonies * * * that established the self-funded Hutterian Brethren General Medical Plan to provide medical coverage to Hutterite Colony members"); and *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, C.D. Ill. No. 1:13-cv-01054-SLD-JEH, 2015 WL 1399229, *2 (Mar. 25, 2015) (distinguishing between commercial health insurers, which "include managed-care organizations, other HMOs or PPOs, and employer *self-funded plans*," and "Government payors" like "Medicare, Medicaid, and TRICARE" (Emphasis added.)).

**{¶ 33}** It is true that public employers can have "self-funded" health insurance plans. *See Dayton City School Dist. Bd. of Edn. v. Dayton Edn. Assn.*, 2018-Ohio-4350, 122 N.E.3d 249, ¶ 5 (2d Dist.) (noting that public school system had a "self-funded insurance plan"). However, the Department is not a public employer with respect to the situation before us, and we have found no reference in either federal or Ohio law to Medicaid as a "self-funded" program.

### 2. Status of Various Versions of R.C. 5160.37

**{¶ 34}** We also disagree with the Masters' contention that the Department should be considered as a "subrogee" under R.C. 2323.44 because Ohio courts have "uniformly" recognized all versions of R.C. 5160.37 as subrogation statutes. The Masters use this argument in conjunction with R.C. 2323.44(B)'s statement that a third party's subrogation claim will be proportionally reduced if the full value of a tort action is not recovered,

"[n]otwithstanding any contract or statutory provision to the contrary." According to the Masters, R.C. 2323.44 is unambiguous and controls over R.C. 5160.37.

{¶ 35} "When interpreting a statute, we first look to the plain language of the statute and apply it as written when its meaning is clear and unambiguous." *Cheap Escape Co. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 9. It is true that R.C. 2323.44(B) rejects "any" contrary statutory provisions or contracts and subjects "the rights of a subrogee" who asserts "contractual, statutory, or common law subrogation" to a proportional recovery. As written, this part of the statute is broad and is not inherently ambiguous. Nonetheless, R.C. 2323.44(A)(5) specifically defines "subrogee" for purposes of R.C. 2323.44 and limits who will be considered a subrogee to four situations. These include: "(a) An insurance company doing business in this state; (b) A self-funded plan providing health, sickness, or disability benefits; (c) A health care provider-sponsored organization; [and] (d) Any person or entity that claims a right of subrogation by contract or common law." As we have said, the Department does not fit within the definition of a "self-funded" entity in R.C. 2323.44(A)(5)(b). The Masters have not argued that another listed category in R.C. 2323.44(A)(5) applies.

{¶ 36} Furthermore, even if this were otherwise, the first point of analysis for whether a particular statute controls is whether a general and a specific statute exist and involve the same or similar subject matter. *State ex rel. Dublin Securities, Inc. v. Ohio Div. of Securities*, 68 Ohio St.3d 426, 430, 627 N.E.2d 993 (1994). For example, in *Dublin Securities*, the court found that R.C. 149.43, a public records statute, applied generally. *Id.* However, the other statute involved, R.C. 1707.12, applied "only to

documents filed with or obtained by the Division through any investigation." *Id.* As a result, R.C. 1707.12 was "a specific statute enacted as part of an overall statutory scheme that authorizes the Ohio Division of Securities to investigate alleged violations of Ohio's securities laws." *Id.*

**{¶ 37}** Similarly, R.C. 2323.44 is a general statute directed to assertion of subrogation rights in tort actions, and R.C. 5160.37 (and its predecessor, R.C. 5101.58) are specific, as they deal with how the Department can recoup money for medical payments made on behalf of parties who receive public assistance.

**{¶ 38}** If the statutes involve the same subject matter, R.C. 1.51 applies; if not, it does not apply. *Dublin Securities* at 426. Here, both R.C. 2323.44 and R.C. 5160.37 deal generally with allocation of tort recovery, and R.C. 1.51 therefore applies.

**{¶ 39}** R.C. 1.51 provides that:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

**{¶ 40}** In our opinion, the statutes are not irreconcilable, because the Department is not a "subrogee" as defined in R.C. 2323.44(A)(5). However, even if it were, R.C.

5101.58 was enacted before R.C. 2323.44.[1]   Our review of the history of these statutes fails to reveal any intent that the more general provision in R.C. 2323.44 should prevail. Furthermore, contrary to the Masters' claims, Ohio courts have not uniformly recognized all the versions of R.C. 5101.58 (now R.C. 5160.37) as subrogation statutes.

{¶ 41} Former R.C. 5101.58 was enacted in 1976 and was interpreted as giving a "statutory right of subrogation" to what was then the department of public welfare. *Ledwell v. May Co.*, 54 Ohio Misc. 43, 47, 377 N.E.2d 798 (C.P. 1977).   At that time, and until later amended, the statute allowed the welfare department to recoup all costs it had paid on behalf of an injured party other than " 'attorney fees, costs, and other expenses incurred by a recipient of aid or medical assistance in securing the judgment, settlement, or compromise.' "   *Padgett v. Ohio Dept. of Pub. Welfare*, 65 Ohio App.2d 96, 97, 416 N.E.2d 639 (6th Dist.1979).

{¶ 42} In 1994, our court rejected the claim of the Ohio Department of Human Services[2] that it had an independent right of recovery rather than a subrogation interest. The Department had asserted this position in an attempt to avoid a res judicata bar.   *See Waldron v. Miami Valley Hosp.*, 2d Dist. Montgomery No. 14108, 1994 WL 680152, *19

---

[1] R.C. 2323.44 was enacted as a new statute in 2015 and was effective on September 29, 2015.   *See* Am.Sub.H.B. 64, 2015 Ohio Laws 11.   R.C. 5101.58 has been in effect since 1976.   *See* H. 707, 1979 H. 176.   R.C. 5101.58 has also been extensively amended over the years.   The latest amendment occurred in 2013, when it was amended and recodified as R.C. 5160.37.   *See* Am. Sub. H.B. 59, 2013 Ohio Laws File 25, effective September 29, 2013.   R.C. 5160.37 was also amended twice after that, in 2015 and 2017.   *See* Am.Sub.H.B. 64, 2015 Ohio Laws 11, and Am.Sub.H.B. 49, 2017 Ohio Laws 14.

[2] This is the same entity as the Ohio Department of Medicaid, which is the current name of the organization.   For simplicity, we will also use the term "Department" to refer to the Ohio Department of Human Services.

(Dec. 7, 1994). In this regard, the Department argued that R.C. 5101.58 did not refer to subrogation in the "traditional sense," which "entitles a party to be substituted for another in regard to a remedy of the first party." *Id.* The Department's theory was that the plaintiff had no right to recover medical expenses in a tort action because he had never paid them; instead, the Department had paid. *Id.* In addition, the Department relied on "a similar federal subrogation statute, the Medical Care Recovery Act, Section 2651 et seq., Title 42, U.S.Code," under which federal courts had "consistently held that an independent cause of action exists even though the word 'subrogation' is used in the statute." *Id.*

{¶ 43} We rejected the first argument because the plaintiff had a derivative right to recover expenses, and whether Medicaid had billed him for the expenses did not alter the right. *Id.* Concerning the second point, we found the federal cases unpersuasive, based on the difference in statutory language. Specifically, the federal statute stated that " 'the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished.' " *Id.* at *20, quoting 42 U.S.C. 2651(a). Based on this language, federal courts found that an independent right of action was conferred. In contrast, Ohio's statute lacked analogous language. We stressed that instead, "R.C. 5101.58 refers only to subrogation and makes no reference to an independent right of recovery." *Id. Accord Ohio Dept. of Human Servs. v. Kozar*, 99 Ohio App.3d 713, 717, 651 N.E.2d 1039 (8th Dist.1995).

{¶ 44} After our decision, the language in R.C. 5101.58 was changed in 1997 to read that "[t]he acceptance of aid pursuant to Chapter 5107., 5111., or 5115. of the

Revised Code gives a right of recovery to the department of human services." H.B. 215, 1997 Ohio Laws 37, effective Sept. 29, 1997. Thus, the word "recovery" was substituted for "subrogation," and the language was then consistent with the federal statute.

{¶ 45} Initially, the cases decided after this amendment did refer to a right to "subrogation." However, they either involved the prior version of R.C. 5101.58 or were simply discussing cases decided under the prior version. *E.g., St. Paul Fire & Marine Ins. Co. v. Berdyck*, 132 Ohio App.3d 652, 655, 725 N.E.2d 1190 (6th Dist.1999) (applying 1991 version of R.C. 5101.58); *Montgomery v. John Doe 26*, 141 Ohio App.3d 242, 248-250, 750 N.E.2d 1149 (10th Dist.2000) (finding that the statute under consideration -- R.C. 2743.72, which involved reparations for crime victims -- was a traditional subrogation statute like the prior version of R.C. 5101.58 that had been considered in *Kozar*).

{¶ 46} A further amendment was made to R.C. 5101.58 in 2007 and added the word "automatic." Am.Sub.H.B. 119, 2007 Ohio Laws 15, effective Sept. 29, 2007. Thus, after that point, the statute provided the Department with an automatic right of recovery.

{¶ 47} In 2008, the Supreme Court of Ohio distinguished both the pre-1997 version of R.C. 5101.58 and *Kozar* in a case involving a workers' compensation statute. *See Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814. The statute in question was R.C. 4123.931, which had been amended in 2002 to provide that "the payment of workers' compensation benefits in and of itself '*creates a right of recovery* in favor of a statutory subrogee against a third party.' " (Emphasis sic.) *Id.* at ¶ 21, quoting R.C. 4123.931(A). *See also id.* at ¶ 22. The issue

in *McKinley* was whether the action of the Bureau of Workers' Compensation (BWC), the statutory subrogee, was "an action on 'a liability created by statute' " and was thus subject to the six-year statute of limitations in R.C. 2305.07, or was a derivative claim subject to the two-year statute of limitations that governed an injured worker's claim against a liable third party. *Id.* at ¶ 1-2.

{¶ 48} The court found R.C. 4123.931 "fundamentally different" from former R.C. 5101.58 and "manifestly not a typical subrogation" statute due to the language in R.C. 4123.931(A), which provided that payment of benefits creates a "right of recovery." *Id.* at ¶ 21. Furthermore, despite language in R.C. 4123.931 referring to "subrogation," the court found that it granted a recovery "atypical" of traditional subrogation statutes and different from the statute existing before 2002 amendments, which had granted a "right of subrogation." *Id.* at ¶ 22, referencing Ohio Legislative Service Commission Final Bill Analysis of 2002 Sub.S.B. No. 227, 149 Ohio Laws, Part II, 3716 (which had enacted the current versions of R.C. 4123.93 and R.C 4123.931).

{¶ 49} As an additional reason why workers' compensation subrogation differed from traditional subrogation, the court noted BWC's statutory obligation to pay claimants regardless of fault and its subrogation interest as a statutory subrogee that arose from the Workers' Compensation Act. The court contrasted this with traditional subrogation, which is based on a tortfeasor's negligence and an insurer's interest that is derivative of an insured's rights. *Id.* at ¶ 26. Another factor was that "[t]he subrogation statutes are designed to permit the statutory subrogee, who paid the workers' compensation benefits to the claimant in the first instance, to be at least partially reimbursed out of any recovery

that the claimant may obtain from the third party responsible for causing the injury." *Id.* at ¶ 27.

{¶ 50} The court also focused on the use of the "special term 'statutory subrogee,' " which was used throughout R.C. 4123.93 and R.C. 4123.931, as well as the provision in R.C. 4123.931(G), which made claimants and third parties "jointly and severally liable" for the full subrogation amount. *McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, at ¶ 29. This latter provision was inconsistent with traditional notions of subrogation. Accordingly, the court held that "a claim brought by a statutory subrogee pursuant to R.C. 4123.931(G) to recover its subrogation interest is a claim 'upon a liability created by statute' and is therefore subject to the six-year statute of limitations of R.C. 2305.07." *Id.* at ¶ 38.

{¶ 51} While *McKinley* involved a different statute, similar factors exist for both R.C. 5101.58 as it existed after 1997 and the current statute, R.C. 5160.37, which was initially enacted in 2013. *See* Am.Sub. H.B. 59, 2013 Ohio Laws 25, effective September 29, 2013. That bill amended R.C. 5101.58 and gave it a new section number, i.e., R.C. 5160.37.

{¶ 52} Like the statutes in *McKinley*, R.C. 5101.58 as originally enacted provided for a "right of subrogation." However, that was later changed to a "right of recovery" in 1997, and then to an "automatic" right of recovery in 2007. Also like the BWC, the Department is statutorily required to pay medical expenses for persons who qualify for assistance. While these situations involve different reasons for qualifying (workplace injury versus low income), the agencies' obligation to pay is the same, and fault is not a

factor.

{¶ 53} Like workers' compensation, Medicaid is also designed to let the Department recoup or partially recoup payments it has expended for a party's medical assistance. In fact, federal law provides that state plans must require such assignments of rights. *See* 42 U.S.C. 1396k(a)(1)(A) and 42 U.S.C. 1396a(a)(45). Furthermore, not only can the Department recover from liable third parties, it can also recover money third parties may have been required to pay, where medical assistance recipients and their attorneys fail to cooperate with medical providers or fail to disclose information about actions against such third parties. *See* R.C. 5160.37(C) and R.C. 5160.371.

{¶ 54} In fact, if recipients and their attorneys fail to give the Department proper written notice of filing actions, "informal recovery activity," or final settlements and awards, they "are liable to reimburse the department or county department for the recovery received to the extent of medical assistance payments made by the department or county department." R.C. 5160.37(C), (D), and (E). While insured parties in traditional subrogation situations do have a general duty to cooperate with their subrogated insurers, the requirements in these statutes go beyond that.

{¶ 55} After the above cases were decided, a 2011 decision of the Tenth District Court of Appeals did consider R.C. 5101.58 as it had been amended to provide the right of "recovery." The Tenth District did not discuss *McKinley* but did make some comments on the amendment. *See Mulk v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-5850, 969 N.E.2d 1254 (10th Dist.). In *Mulk*, the Department had asserted a right to recover 100% of the medical expenses it had paid, while the appellants maintained they only

needed to reimburse it for "the amount of medical expenses less a pro rata amount of the attorney fees and costs incurred in obtaining settlement of their tort claims." *Id.* at ¶ 3.

{¶ 56} *Mulk* primarily involved whether R.C. 5101.58, by failing to reduce the Department's recovery pro rata, violated federal law as set forth in *Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459. *Id.* at ¶ 7 and 8-19. The court concluded that Ohio's system was similar to other states' "recovery laws" and that *Ahlborn* did "not require a pro rata reduction of appellee's recovery of medical expenses when state law already provides for payment of attorney's fees and costs before calculating the state's recovery." *Id.* at ¶ 17.

{¶ 57} The court did briefly discuss "subrogation" in the context of considering the appellant's claim that "under the law of subrogation, [the Department's] recovery of medical expenses must be reduced pro rata to account for attorney fees and costs because as a subrogee, an appellant cannot maintain a greater right to recovery than its subrogor." *Id.* at ¶ 20. The court's attention was focused on this issue and not specifically on the meaning of "subrogation" versus "recovery." However, some of the court's comments are instructive.

{¶ 58} First, the court observed that " '[i]n Ohio, there are three distinct kinds of subrogation: legal, statutory, and conventional. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other person. Statutory subrogation is a right that exists only against a wrongdoer. Conventional subrogation is premised on the contractual obligations of the parties, either

express or implied.' " *Mulk*, 2011-Ohio-5850, 969 N.E.2d 1254, at ¶ 21, quoting *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 72 Ohio St.3d 120, 121, 647 N.E.2d 1358 (1995).

{¶ 59} The court then remarked that in 1997, the legislature had amended R.C. 5101.58 to substitute "recovery" for subrogation. *Id.* at ¶ 22, citing Am.Sub.H.B. 215, 147 Ohio Laws 877, 1584. After noting this, the court said that:

> The Legislative Service Commission analysis of the bill amending R.C. 5101.58 indicates that this change was enacted to eliminate some of the limits on appellee's ability to *recover* from liable third parties, such as a failure of the beneficiary to bring an action within the period allowed under the statute of limitations. Am.Sub.H.B. No. 215, Legislative Service Commission Final Analysis (1997). The change also allowed appellee and county departments of job and family services to seek reimbursement of payments for medical expenses *independent* of the beneficiary. *Id.* Thus, it appears that the General Assembly intended to ensure that appellee's ability to recover payments for medical expenses from a liable third party *was not limited by the general law of subrogation*.

(Emphasis added.) *Id.* at ¶ 22.

{¶ 60} The court further said, although in the context of deducting attorney fees, that the 1997 amendment had changed "the right of subrogation into a right of recovery * * *." *Id.* at ¶ 24. Consequently, while the court did not make precisely the same statements as the Supreme Court did in *McKinley*, the reasoning was similar.

Consequently, the Masters are incorrect in claiming that Ohio courts have "uniformly" recognized all versions of the statute as "subrogation" statutes.

{¶ 61} In a later case, the Tenth District Court of Appeals considered a similar issue of pro-rata reduction, and again remarked that the appellant's argument was "flawed" because the state agency was "asserting a statutory right of recovery, not a right based upon subrogation." *Encompass Indemn. Co. v. Bates*, 10th Dist. Franklin No. 11AP-1010, 2012-Ohio-4503, ¶ 22. This case went further, however, stating that R.C. 5101.58 "expressly creates an independent right of recovery against the settlement proceeds – not a subrogation interest." *Id.* at ¶ 25 (referencing the "automatic right of recovery" in R.C. 5108.58(A) and its further provision that "a public assistance recipient's settlement is subject to the department of job and family services['] automatic recovery right").

{¶ 62} Accordingly, we agree with the trial court that R.C. 2323.44 does not apply to this case and does not afford a jurisdictional basis for the Masters' suit. The first assignment of error therefore has no merit. Having resolved that issue, we turn to the second assignment of error, in which the Masters argue that the trial court erred in finding that R.C. 5160.37 divested the court of jurisdiction.

### C. R.C. 5160.37

{¶ 63} According to the Masters, the trial court erred because R.C. 5160.37 does not apply to them, since they have not yet paid any money to the Department. The Masters further argue that the Department waived its automatic right of recovery against

the tortfeasors when it elected not to join the underlying medical malpractice action.

{¶ 64} As noted, R.C. 5101.58 initially gave the State of Ohio the ability to recoup all medical expenses paid on behalf of Medicaid recipients, except for attorney fees and costs. In *Ahlborn*, which was decided in 2006, the United States Supreme Court "held that the Medicaid statute sets both a floor and a ceiling on a State's potential share of a beneficiary's tort recovery. Federal law requires an assignment to the State of 'the right to recover that portion of a settlement that represents payments for medical care,' but it also 'precludes attachment or encumbrance of the remainder of the settlement.' " *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 633, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013), quoting *Ahlborn*, 547 U.S., at 282, 284, 126 S.Ct. 1752, 164 L.Ed.2d 459.

{¶ 65} The court explained in *Wos* that "[t]his is so because the beneficiary has a property right in the proceeds of the settlement, bringing it within the ambit of the anti-lien provision. * * * That property right is subject to the specific statutory 'exception' requiring a State to seek reimbursement for medical expenses paid on the beneficiary's behalf, but the anti-lien provision protects the beneficiary's interest in the remainder of the settlement." *Id.* at 633-634, citing *Ahlborn* at 284 and 285, and referencing 42 U.S.C. 1396p(a)(1).

{¶ 66} *Wos* involved a North Carolina statute "requiring that up to one-third of any damages recovered by a beneficiary for a tortious injury be paid to the State to reimburse it for payments it made for medical treatment on account of the injury." *Id.* at 630, citing N.C. Gen.Stat.Ann 108A-57. After *Ahlborn*, North Carolina had interpreted this to mean that "when the State's Medicaid expenditures on behalf of a beneficiary exceed one-third

of the beneficiary's tort recovery, the statute establishes a conclusive presumption that one-third of the recovery represents compensation for medical expenses." *Id.* at 635.

{¶ 67} The Supreme Court invalidated North Carolina's statute because it conflicted with Medicaid's anti-lien provision in 42 U.S.C. 1396p(a)(1), which said, in relevant part, that " '[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan.' " *Id.* at 633 and 638. The court noted that the problem with the statute was not that a one-third allocation was unreasonable in all cases; in fact, it may have been fair in some. However, the court stressed that the State failed to provide "any evidence to substantiate its claim that the one-third allocation is reasonable in the mine run of cases. Nor does the law provide a mechanism for determining whether it is a reasonable approximation in any particular case." *Id.* at 637.

{¶ 68} In this regard, the court pointed to other states that had designed "administrative and judicial procedures to ensure a prompt and fair allocation of damages." *Id.* at 641. Many had also "established rebuttable presumptions and adjusted burdens of proof to ensure that speculative assessments of a plaintiff's likely recovery do not defeat the State's right to recover medical costs * * *." *Id.*

{¶ 69} After *Ahlborn* was decided in 2006, Ohio amended R.C. 5101.58 in 2007. "[T]he amended statute continued to give the Department an automatic right of recovery over certain third-party payments to Medicaid participants, but it created a presumption regarding the amount of the settlement or judgment that was subject to reimbursement to the Department for its payment of medical costs if the settlement or judgment did not

specifically allocate those sums. After deducting attorney fees, litigation costs, and other expenses from the total judgment, award or settlement, the statute provided that the Department was entitled to receive 'no less than one-half of the remaining amount, or the actual amount of medical assistance paid, whichever is less.' " *Pivonka*, 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098, at ¶ 7, discussing former R.C. 5101.58(G)(2), which was effective on September 29, 2007. This was similar to the North Carolina statute that *Wos* invalidated in 2013. *Id.* at ¶ 8-9.

{¶ 70} Shortly after the decision in *Wos*, the General Assembly amended R.C. 5101.58 and renumbered it as R.C. 5160.37. *Id.* However, the content in subsection (G)(2) as to the Department's amount of recovery remained the same. *See* Am. Sub. H.B. 59, 2013 Ohio Laws File 25. The statute was then amended twice more, once in 2015 and again in 2017. The 2015 amendments added a "rebuttable presumption" that the Department should "receive no less than one-half of the remaining amount, or the actual amount of medical assistance paid, whichever is less." Am.Sub.H.B. 64, 2015 Ohio Laws 11. In addition, the 2015 amendments added new subsections (L) though (P), which provided an administrative remedy pursuant to which parties could request an administrative hearing to rebut the presumption. *Id.* The final amendments, which were effective on September 29, 2017, made essentially non-substantive changes. *See* Am.Sub.H.B. 49, 2017 Ohio Laws 14. Thus, the General Assembly acted to remedy some of the deficiencies found in *Ahlborn* and *Wos*, although no courts had declared former R.C. 5101.58 unconstitutional or invalid. *Pivonka* at ¶ 8 and 9.

{¶ 71} The current version of R.C. 5160.37 applies here, because the Masters

settled their medical malpractice action in August 2021. As applicable here, R.C. 5160.37(A) provides as follows:

A medical assistance recipient's enrollment in a medical assistance program gives an automatic right of recovery to the department of medicaid and a county department of job and family services against the liability of a third party for the cost of medical assistance paid on behalf of the recipient. When an action or claim is brought against a third party by a medical assistance recipient, any payment, settlement or compromise of the action or claim, or any court award or judgment, is subject to the recovery right of the department of medicaid or county department. Except in the case of a medical assistance recipient who receives medical assistance through a medicaid managed care organization, the department's or county department's claim shall not exceed the amount of medical assistance paid by the department or county department on behalf of the recipient. A payment, settlement, compromise, judgment, or award that excludes the cost of medical assistance paid for by the department or county department shall not preclude a department from enforcing its rights under this section.

{¶ 72} As previously noted, R.C. 5160.37(C), (D), and (E) contain notice and cooperation requirements for recipients and their attorneys, and penalties for failure to comply. R.C. 5160.37(E), in fact, states that no compromise, settlement, judgment, or recovery "shall be made final" unless the Department is first given notice and a "reasonable opportunity to protect its rights of recovery."

{¶ 73} R.C. 5160.37(G) further states that:

(1) Subject to division (G)(2) of this section, the right of recovery of the department or county department does not apply to that portion of any judgment, award, settlement, or compromise of a claim, to the extent of attorneys' fees, costs, or other expenses incurred by a medical assistance recipient in securing the judgment, award, settlement, or compromise, or to the extent of medical, surgical, and hospital expenses paid by such recipient from the recipient's own resources.

(2) Reasonable attorneys' fees, not to exceed one-third of the total judgment, award, settlement, or compromise, plus costs and other expenses incurred by the medical assistance recipient in securing the judgment, award, settlement, or compromise, shall first be deducted from the total judgment, award, settlement, or compromise. After fees, costs, and other expenses are deducted from the total judgment, award, settlement, or compromise, there shall be a rebuttable presumption that the department of medicaid or county department *shall receive* no less than one-half of the remaining amount, or the actual amount of medical assistance paid, whichever is less. A party may rebut the presumption in accordance with division (L)(1) or (2) of this section, *as applicable.*

(Emphasis added.)

{¶ 74} R.C. 5160.37(H)(1),(2), and (3) give the Department the ability to enforce its recovery rights by intervening or joining in any action or proceeding the recipient

institutes against any third party who may be liable, instituting its own legal proceedings against such a third-party, or instituting legal proceedings in conjunction with recipients, their attorneys, or their representative. According to the Masters, the Department waived the right to enforce its automatic right of recovery because it elected not to join their litigation against the tortfeasor. Masters' Brief at p. 9-10. However, this subsection does not say that the Department must join or initiate actions; it merely allows the Department to enforce its rights in one of these ways if it chooses to do so. This part of the statute does not affect the fact that a medical assistance recipient is obligated to cooperate and to notify the Department of claims against a potentially liable third party, nor does it obviate the recipient's duty to pay the Department the amounts specified in R.C. 5160.37(G). As indicated, R.C. 5160.37(G)(2) states that the Department "shall receive" no less than one-half of the remaining amount of the tort recovery or its actual expenses, whichever is less.

{¶ 75} The Masters contend that R.C. 5160.37(L) is inapplicable because R.C. 5160.37 does not authorize a "direct action" against the Masters. Appellants' Reply Brief, p. 7. We disagree. R.C. 5160.37(G)(2) provides two means of rebutting the presumption about what the Department "shall receive" from a judgment or settlement, depending on whether R.C. 5160.37(L)(1) or R.C. 5160.37(L)(2) applies. R.C. 5160.37(L)(1) provides that:

> *Prior to any payment to the department* or a county department pursuant to
>
> the department's or county department's *right of recovery* under this section,
>
> *a party that desires to rebut the presumption in division (G) of this section*

*shall submit to the department or county department a request for a hearing in accordance with the procedure the department establishes in rules required by division (O) of this section. The amount sought by the department or county department shall be held in escrow or in an interest on lawyers' trust account until the hearing examiner renders a decision or the case is otherwise concluded.* A party successfully rebuts the presumption by a showing of clear and convincing evidence that a different allocation is warranted.

(Emphasis added.) Clearly, this subsection allows a medical assistance recipient to attempt to rebut the amount to be paid to the Department *before* paying the amount that is statutorily due. The presumed amount due to the Department must be held in escrow or a trust account to safeguard the Department's interest. This would apply here.

{¶ 76} R.C. 5160.37(L)(2) provides for a second scenario, in which a medical assistance recipient has already repaid the Department on or after September 29, 2007. In that case, the party may request a hearing to rebut the presumption. The statute also provides a time limit for requesting a hearing, i.e., "not later than one hundred eighty days after September 29, 2015, or ninety days after the payment is made, whichever is later." This was the situation involved in *Pivonka*, in which a class action complaint was brought by two plaintiffs from whom the Department had received reimbursement before R.C. 5160.37 was enacted. *Pivonka*, 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098, at ¶ 11-12.

{¶ 77} The trial court in that case had certified a class which included " '[a]ll persons

who paid any amount to defendant pursuant to O.R.C. 5101.58 from April 6, 2007, until April 5, 2013 [the date the lawsuit was filed], without requirement of court order.' " *Pivonka v. Sears*, 2018-Ohio-4866, 125 N.E.3d 343, ¶ 20 (8th Dist.), *reversed by Pivonka*, 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098.

{¶ 78} In reversing, the Supreme Court of Ohio held in *Pivonka* that R.C. 5160.37 provided the sole remedy for class members who had reimbursed the Department after September 29, 2007. *Id.* at ¶ 2. The court also remanded the case "to the trial court to determine whether unnamed prospective class plaintiffs who reimbursed the Department before September 29, 2007, can maintain an action in the common pleas court." *Id.* The reason for this latter statement is that the administrative scheme outlined in R.C. 5160.37(L)(2) applied, by its express terms, only to those persons who paid claims on or after September 29, 2007. Before that time, no administrative remedy existed.

{¶ 79} This point ties into an argument the Masters have made, which is that "the precedent of the Tenth District Court of Appeals holding in *Mulk* * * * conclusively debunks Medicaid's challenge to the jurisdiction of the Clark County Probate Court to provide the declaratory relief sought by the Masters' Complaint." Masters' Reply Brief at p. 3, referencing *Mulk*, 2011-Ohio-5850, 969 N.E.2d 1254. We have already discussed *Mulk*, and the Masters' position is incorrect. *Mulk* was decided in 2011, long before the 2015 amendments to R.C. 5160.37, which created an administrative remedy.

{¶ 80} *Pivonka* also did not discuss R.C. 5160.37(L)(1). That part of the statute did not apply, since the amounts in question had already been paid. R.C. 5160.37(L)(2), therefore, applied. This distinction is of no particular consequence here, however,

because both subsections provide the same administrative remedy, with the exception that R.C. 5160.37(L)(2) limits the time within which a medical assistance recipient can ask for an administrative hearing.

{¶ 81} The court stressed in *Pivonka* that the General Assembly has the constitutional authority to "define the limits" of court jurisdiction, and that "[t]he General Assembly vests exclusive jurisdiction in an administrative agency when it enacts a comprehensive statutory scheme for review by that agency." (Citations omitted.) *Pivonka,* 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098, at ¶ 21-22. As noted, the court held that the administrative remedy in R.C. 5160.37 was, "by its own terms, the sole remedy available." *Id.* at ¶ 23, citing R.C. 5160.37(P). This part of the statute states that:

> Divisions (L) to (N) of this section are remedial in nature and shall be liberally construed by the courts of this state in accordance with section 1.11 of the Revised Code. *Those divisions specify the sole remedy available to a party who claims the department* or a county department has received *or is to receive* more money than entitled to receive under this section, section 5160.38 of the Revised Code, or former section 5101.58 or 5101.59 of the Revised Code.

(Emphasis added.) Again, this is phrased not just in terms of the past but also the future, i.e., it encompasses money the Department has not yet received.

{¶ 82} The Supreme Court of Ohio concluded that the administrative process was "complete and comprehensive" and detailed the various procedures in the statute that

gave administrative tribunals acting under R.C. 5160.37 "exclusive subject matter jurisdiction" over claims relating to payments made to the Department (or as noted, relating to payments the Department is to receive). *Pivonka* at ¶ 23. Among other things, these procedures included the right to appeal from the Department's decision to the common pleas court under R.C. 119.12. *See* R.C. 5160.37 (N).

**{¶ 83}** Accordingly, because R.C. 5160.37 provides exclusive subject matter jurisdiction over the matters at issue, the trial court did not err in dismissing the complaint for lack of subject matter jurisdiction. The Masters' second assignment of error is also overruled.

### III. Alleged Violation of Anti-Lien Provision

**{¶ 84}** The Masters' Third Assignment of Error states that:

R.C. §5160.37 as applied to Plaintiffs/Appellants in This Case Is a Violation of 42 U.S.C. §1396(p)(a)(1) as applied by the United States Supreme Court in *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268 at Syllabus (b).

**{¶ 85}** Under this assignment of error, the Masters contend that the Medicaid Anti-Lien Provision in 42 U.S.C. 1396p(1)(a) preempts Ohio's ability to take any part of a beneficiary's tort judgment or settlement that was not " 'designated as payments for medical care.' " Masters' Brief at p. 12, quoting *Ahlborn*, 547 U.S. at 284, 126 S.Ct. 1752, 164 L.Ed.2d 459.

**{¶ 86}** The bases for this argument include: (1) R.C. 5160.37 requires proof that

exceeds the burden of proof of medical causation required at trial; (2) the Masters had to pay a 40% contingency fee, whereas the statute only provides credit for a one-third contingency fee; and (3) the statute violates the very underpinning of subrogation, which is that a subrogee can obtain no more rights than a subrogor.

{¶ 87} The trial court did not address these issues, and they are irrelevant to the jurisdictional issue.   Consequently, this assignment of error is overruled.


IV.   Fine and Forfeiture Caused by Application of R.C. 5160.37

{¶ 88} The Masters' fourth assignment of error states that:

Application of R.C. §5160.37 by Appellee Will Affect a Fine and Forfeiture Based on Plaintiffs/Appellants' Selection of Medicaid as Their Health Care System in Derogation of Article 1, Section 21 of the Ohio Constitution.

{¶ 89} Under this assignment of error, the Masters argue that the presumption in R.C. 5160.37(G)(2) that the Department should recover no less than $338,421.70 violates their rights under Article I, Section 21 of the Ohio Constitution.   In this regard, they rely on subsection (A) of Section 21, which states that "No federal, state, or local law or rule shall compel, directly or indirectly, any person, employer, or health care provider to participate in a health care system."   They further note that "compel" is defined in subsection (E)(1) of Section 21 as including "the levying of penalties or fines," and that subsection (E)(2) defines a health care system as "any public or private entity or program whose function or purpose includes the management of, processing of, enrollment of

individuals for, or payment for, in full or in part, health care services, health care data, or health care information for its participants."

{¶ 90} As with the third assignment of error, this argument is based on the burdens and encumbrances that R.C. 5160.37 imposes, which the Masters contend constitute levying fines and penalties for enrolling in Medicaid.

{¶ 91} The trial court rejected this argument, finding that the Masters could not circumvent the requirement of an administrative appeal by raising an "as applied" challenge. Entry (Jan. 7, 2022), at p. 4. The court found that such a challenge must be raised in an administrative appeal. *Id.* We agree.

{¶ 92} "A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose. * * * Facial challenges to the constitutionality of a statute are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. * * * If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances." (Citations omitted.) *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. That would not be the situation here.

{¶ 93} "A party raising an as-applied constitutional challenge, on the other hand, alleges that 'the "application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly inoperative." ' " *Id.* at ¶ 22, quoting *Yajnik v. Akron*

*Dept. of Health, Housing Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14. "Because an as-applied challenge depends upon a particular set of facts, this type of constitutional challenge to a rule must be raised before the administrative agency to develop the necessary factual record." *Id.*

{¶ 94} While " '[i]t is settled that an administrative agency is without jurisdiction to determine the constitutional validity of a statute.' " the Supreme Court of Ohio has "also recognized that facial and as-applied constitutional challenges can be raised on further appeal from an administrative agency to a court." *State ex rel. Kingsley v. State Emp. Relations Bd.*, 130 Ohio St.3d 333, 2011-Ohio-5519, 958 N.E.2d 169, ¶ 18, quoting *State ex rel. Columbus S. Power Co. v. Sheward*, 63 Ohio St.3d 78, 81, 585 N.E.2d 380 (1990). (Other citation omitted.)

{¶ 95} In the case before us, R.C. 5160.37(N) provides the Masters with the right to appeal from an administrative decision to the court of common pleas. A factual record can be made during the administrative hearing, and the Masters can raise constitutional questions in the common pleas court if they appeal. In fact, the Department stated in its brief that the Masters did file for an administrative hearing pursuant to R.C. 5160.37(L)(1), and a hearing was held on April 25. 2022. *See* Appellees' Brief at p. 1-2. The Masters have not disputed this. Accordingly, for the reasons stated, the administrative process is the proper avenue for raising constitutional questions about the statute, and the trial court did not err in its decision. The fourth assignment of error is overruled.

## V. Conclusion

{¶ 96} All of the Masters' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Sam G. Caras
David M. Deutsch
Dennis V. Yacobozzi, II
Hon. Richard P. Carey